PLOTKIN, Judge.
The defendant, Richard Powell, appeals his conviction for simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2. The defendant was sentenced to serve six years at hard labor, the first year to be served without the benefit of probation, parole, or suspension of sentence. We affirm.
Lydia Lowry testified that at approximately 8:30 A.M. on January 20, 1992 she observed, from a window in her house, a red truck with a white camper parked out front. She also observed a man carrying things from her neighbor, Adomirum “Donald” Ruth’s, house and putting them into the truck. Ms. Lowry approached the man and tapped him on the shoulder. When she tapped him on the shoulder, he dropped a can of money he had taken from Mr. Ruth’s house. Ms. Lowry asked the man whether he knew “Donald” and he responded that “Donald” was inside. Ms. Lowry became suspicious because Mr. Ruth’s car was not parked outside. After the man left, Ms. Lowry walked across the street and found broken glass at the back of Mr. Ruth’s house. At that point, she instructed her daughter to call Mr. Ruth’s mother to see if she could locate him, and she called the police. Ms. Lowry described the perpetrator as being approximately five feet, seven inches tall, dark complected, clean shaven, with a short haircut, large teeth and squinty eyes. She also stated that the perpetrator was wearing a jogging suit with a hood. On February 1, 1992, she identified the defendant from a photographic line-up.
Adomirum Ruth testified that when he returned home, he found a pistol, videocassette recorder, a leather coat, and all his jewelry missing. Based on Ms. Lowry’s description of the perpetrator, he informed the police that it sounded like a former co-worker he used to work with at the New Orleans Sewerage and Water Board. He also informed the police that the red truck with white camper might belong to a Frank Landry. Mr. Landry was also a former co-worker of Mr. Ruth’s and a good friend of the defendant’s.
The defendant, Richard Powell, testified. He denied an ongoing relationship with Frank Landry, stating that he had not seen Mr. Landry since 1988. The defendant also denied the burglary. Finally he challenged the identification given by Ms. Lowry, contending that he had a goatee for approximately eighteen years and gold in his teeth.
EXCESSIVE SENTENCE:
A. Motion To Reconsider Sentence:
By his sole assignment of error, the defendant contends that the trial court erred by imposing a sentence greatly outside the sentencing guidelines. The State responds that having failed to timely file a motion to reconsider sentence pursuant to La.C.Cr.P. art. 881.1, defendant’s claim should not be considered.
La.C.Cr.P. art. 881.1 provides that the State or the defendant may make or file a motion to reconsider sentence within thirty days after the imposition of sentence or with *950 in such longer period as the trial court may set at sentence. La.C.Cr.P. art. 881.1(D) provides that:
[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
In the present ease, the defendant was sentenced on October 16, 1992. The motion to reconsider sentence was not filed until December 8, 1992. On simple inspection of the filing date of the motion to reconsider sentence, the thirty day period in which to file the motion had expired. However, defendant contends that the motion is timely filed because it was filed only a few days after the appointment of the public defender for appeal. He concedes that the motion was filed well after the original sentencing, but argues that he was virtually abandoned by retained counsel. Therefore, the strict time limitation of La.C.Cr.P. art. 881.1(D) should not apply in this case. We agree.
La.C.Cr.P. art. 881.1 is designed to promote judicial economy by requiring defendants to pursue their relief as expeditiously as possible. However, the article does not envision that defendants will be denied review of their sentence irrespective of the circumstance because of the failure to strictly adhere to its time limitations.
In the instant case, the record reveals that the defendant’s appeal status was originally set for October 22,1992 and was continued four times. Finally, on December 1, 1992 the court appointed O.I.D.P. attorney John Ruskin who orally moved for an appeal. Clearly, during the crucial period in which post-trial motions are to be filed, the defendant was essentially unrepresented by counsel. Additionally, the record reflects that the motion was filed only a few weeks after the deadline for filing had passed and then only seven days after counsel was appointed to represent defendant on appeal. Therefore, because defendant, in this case, was essentially unrepresented by counsel during the period in which the motion to reconsider should have been filed and the actual delay in filing was not unreasonable, this Court finds that 30 day filing requirement of art. 881.1 does not preclude a review of the defendant’s sentence.

B.Prior Felony Record:

The initial issue for review is the effect of a plea tendered pursuant to La.R.S. 40:983 under the Louisiana Sentencing Guidelines. The defendant argues that the trial court erroneously considered his plea under R.S. 40:983 to possession of cocaine in case number 322-999‘T” as constituting a prior felony record.
La.R.S. 40:983 allows certain defendants who have never previously violated a narcotics law to enter into a special relationship with the court:
[Wjhen it appears that the best interests of the public and of the defendant will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required. Among such conditions the court shall order that the defendant perform not less than one hundred hours of court-approved community service that may include manual labor.
B. Upon the defendant’s violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such per-, son.
C. Upon fulfillment of the terms and conditions of probation imposed in accordance with this Section, the court shall discharge such person and dismiss the proceedings against him.
D. Discharge and dismissal under this Section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for second or subsequent convictions under R.S. 40:982.
*951 In establishing a designated sentencing range, the sentencing guidelines take into account the offense of conviction (Crime Seriousness Level) and the offender’s prior criminal history (Criminal History Index). Louisiana Sentencing Guidelines § 103. For purposes of the Criminal History Index, § 205(B)(8) specifically defines a prior conviction as including “a plea of guilty or nolo contendere, a verdict of guilty, a judgment of guilt ... occurring before the conviction for the offense which serves as the basis for the current sentencing.”
The defendant, in his brief, contends that a plea under R.S. 40:983 does not fall under any of the categories provided for in § 205(B). He further contends that the language of R.S. 40:983 is clear and that no disabilities should attach to such a plea.
We find that the trial court correctly considered the defendant’s plea in case number 322-999‘T” for purposes of sentencing under the guidelines. First, the definition of prior conviction contained in § 205(B) has been amended to include a guilty plea under R.S. 40:983. Although not effective until April 1, 1993, it appears to have been the intent of the Sentencing Commission to include such a plea in its definition of prior conviction, and that the amendment was necessary only to eliminate technical problems experienced by courts in implementing the guidelines. See Louisiana Sentencing Guidelines § 205(B), as amended, April 1, 1993.
Second, under § 205(B)(3) .“custody status” is defined as “any form of criminal justice supervision resulting from a guilty plea, conviction, or an adjudication of delinquency including post conviction release or bail, confinement, probation, or parole.” Comment (2)(c) of § 205(B) states that although “pre-conviction custody following arrest and periods during which the defendant was released on pre-trial bail does not place an offender in a “custody status,” ... the sentencing court may consider such behavior as an aggravating circumstance in deciding whether to depart from the recommended sentencing rangé.” Therefore, the trial court could properly have considered the relator’s “custody status” as an aggravating circumstance in imposing sentence.
C. Excessive Sentence:
The sentencing transcript shows that the trial court considered relator’s prior plea in ease number 322-999“I” under R.S. 40:983 as constituting a prior criminal record. Assuming that the defendant’s 40:983 plea counts as a prior record, the suggested sentence for a Class D offender with two criminal history points is a range of fifty-four months (4½ years) to sixty-six months (5½ years). The defendant received a sentence of six years, or six months more than that recommended by the sentencing guidelines.
La.C.Cr.P. art. 881.6 provides that “[n]o sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the court to impose a sentence in conformity with the sentencing guidelines of the commission.” However, in State v. Smith, 610 So.2d 152 (La.App. 4th Cir.1992), this Court held that, while 881.6 gives the trial court discretion in imposing sentences not in conformity with the guidelines, “[i]t is an abuse of the trial court’s discretion to impose a sentence that grossly deviates from the guidelines when that deviation is not supported by the record.” Id. at 155. Thus, this Court has developed a two prong test for reviewing sentences which do not comply with the sentencing guidelines: 1) is the sentence a gross deviation from the guidelines and 2) is the deviation supported by the record.
In Smith, the defendant received fifteen years; the sentencing range was 4½ to 5½ years. Nonetheless, the minimum sentence the defendant could receive under his multiple offender sentence was ten years. Louisiana Sentencing Guidelines § 309(B). In Smith, this Court vacated the defendant’s sentence and ordered imposition of the minimum ten year sentence under the multiple bill finding that the defendant’s sentence of fifteen years was a “gross deviation” from the guidelines and unsupported by the record.
Unlike Smith, the sentence in the instant case exceeds the recommended sentence by only six months. Although the trial court did not list extensive aggravating circumstances, *952 the statutory sentencing range for a violation of La.R.S. 14:62.2 is from one to twelve years. We find that the defendant’s sentence of six years, which constitutes six months over that recommended by the sentencing guidelines, is not a “gross deviation.” Because we find that the imposition of an additional six months on a sentence of five and a half years is not a gross deviation from the sentencing guidelines we are bound by La.C.Cr.P. art. 881.6 to affirm the sentence.
Accordingly, defendant’s sentence and conviction are affirmed.
JONES, J., dissents with reasons.